The next case is Case No. 4-18-0153, Smicker v. Weber et al., appearing for the appellant is Attorney Steven Mann, and for the appellee is Attorney James Green. Good morning, gentlemen. Mr. Mann, are you ready to proceed? I am. Good morning, Your Honors. I come before you today on behalf of Carl Smicker to address the matter of a trespass, an aiding and abetting trespass claim that was filed in Ford County. Such claim was dismissed pursuant to a combined Motion 619.1. The 619 portion was addressed first and then the court later addressed the 615. I'll start my argument by addressing what Illinois courts define as trespass. Trespass is entry onto another's land without permission, invitation, or right. All who wrongfully contribute to the commission of a trespass, or assent to its commission, or connive therein, or who aid, abet, or assist the trespasser in committing trespass are equally liable with the one who does the act. This particular claim was a claim against Commonwealth Edison and Leo Weber as representative of Rogers Township as road commissioner. The claim asserts that Mr. Weber was aware of movement of certain poles into the field of my client. Those poles existed at the time of the filing of the complaint. Those poles still exist there today. In support of the substance of my particular complaint. When did your client become aware that the poles that were placed were actually a trespass to his property? I believe my client, Your Honor, became aware. I can't say how soon after they were installed because he doesn't know, but it was sometime in the fall of 2014. So this case doesn't involve a discovery of the trespass at all. It's just simply whether it's a continued trespass, right? That's correct. It does not involve the discovery other than the fact that he knows that there's a pole there that's on his private land. And so that is correct. I'm not indicating that it has to do with when it was installed. I don't understand my question. Clearly he knows when the poles go up, but when did he know that it was actually over on his property rather than upon the Eastman? That's right. And that was known, I believe, in the fall of 2014. He does live in the area that we're talking about with the farmland. His house is actually there. So it wouldn't probably not have been that long after they were actually installed, he would have noticed that it was there. Right. How many poles are there? I believe the survey indicated that for the portion that was in question, there were, I believe, five or six poles that were in violation. And counsel, if I could just cut right to the chase here. Sure. The Feltmire case, which is an Illinois Supreme Court case, says that a continuing violation or tort is occasioned by continuing unlawful acts in conduct, not by continual ill effects from an initial violation. How do you get around that case? Well, I get around it. Well, I'm not going to try to get around it, but I certainly would address the case. That's right. I would try to address the case. And I believe that the Feltmire case is an intentional infliction of emotional distress case. By indicating that it is known in Illinois law that when a defendant erects a structure, and I believe this is, I got this from Prosser, which cited another case, or dumps rubbish upon the land of the plaintiff, the invasion is continued by the failure to remove it. So I'm aware that there are a number of cases that have been cited by the defendant here that are addressing structures built in other locations other than the land itself, where an injury results from the completion of the construction of that object into the land. That's certainly distinguishable here. The object of the injury continues to exist on the land every single day that it's there. It's an encroachment on his private right to use that land. You know, there's also Bank of Ravenswood, and I believe cited the both. I didn't see that you addressed either Feltmire or Bank of Ravenswood in your reply brief, but it would appear that the Bank of Ravenswood fact scenario is more closely, is closer to the facts in this case in terms of what the trespass is. How do you distinguish this case from Bank of Ravenswood? I would distinguish the case, again, by starting with the facts of this case. There's a direct trespass on land. Ravenswood was a case of a subway that was constructed a number of feet underground. The other strange part about Bank of Ravenswood is there was, I believe, an easement that was granted by the plaintiff, and then they later sued for noise violations. The court went into this analysis of what constitutes an improvement in order to establish some sort of rule to be able to determine whether the section that they were citing, I believe, was 13205 or whatever the improvement to real property section is, Judge. And I would distinguish it by saying this case, it's a direct trespass. It doesn't get into whether or not, one of the things that's been brought up from Ravenswood is the injury occurs at the completion of the construction of the subway. Well, whether or not the wooden poles that were re-erected on my client's land were finished or not, let's say the cross ties still need to be put on them. That's beside the point. The fact that it is there, it's in his property, it's invading his ability and enjoyment to use, is the injury. That's the injury. So you don't have to go into the analysis of whether or not it's completed and then the ill effects from that have happened or whether it's an improvement to the land above. It continues to be there. It's an injury. And the fact that it's there continues to cause damage to my client on a day-to-day basis. What would the fact pattern be if you survived the statute of limitations? What would you present? I would present a trespass directly to land. To what end? To the end that there is a complete fee, a possessory right of my client. Not to have the poles there. Not to have the poles there. And what happens? What result? We move for a trespass claim in hopes that we can get monetary relief for the invasion. And what is the monetary relief? Well, the monetary... What would it be? I'm sorry. The interruption of the use of that property. And you would show damages in what way? I would show damages by demonstrating cash rent leases that have been reduced because crops have not been able to be planted in this tillable land. I suppose you could get appraisals to determine if there has been a reduction in value, a diminution in value. Counselor, I want to ask you the obvious. Why can't the poles just be moved? There's only five of them. That was part of our request. This is what I know. Comet had brought this issue to the road commissioner. And the road commissioner is standing by his permit. The issue, the injury seems to have been caused by the fact that the permit indicates center line of the road. The measure surveyor went out and actually measured from township road markers that were in sort of the proximate location of the center of the road, but weren't the true center. That's what caused the... That's what we believe, although we're still at the pleading stage. That's what we believe caused this shift where, because this road did not marry up to the true center of the section line, that part of it went into my client's field. That became apparent to the road commissioner. At some point, he actually ordered a survey. He probably determined the fact that it was in the black dirt past the roadside ditch. Ordered the survey. The survey shows that it's past 33 feet. It confirms what he probably already knows. And he has the right to, and I believe, the responsibility to instruct the utility to move those poles back in compliance with his permit. The permit, of course, was issued because the Illinois Highway Code gives him the jurisdiction to define what to do with these poles. And the reason that they were being replaced to begin with was they were going to upgrade their system. And he, on belief, knew that there was going to be wind turbines in this area, so wanted the ability to expand this road in the event that that became necessary. That's what started this whole... So, I do not know why, when it was discovered that these poles went past the right-of-way, that they were not moved back. That that permit was not enforced. That's precisely what precipitated this legal action. Because nothing was happening and status quo wasn't going to work for my client. The cases, of course, that we do cite are cases that appear to be directly on point with the type of situation that we're dealing with here. What is your closest or strongest case? Well, Your Honor, I believe that the strongest case would be those cases cited where the object is actually on top of the ground in violation of the landowner's right. They're older cases. Is that Neely? Is that the one you're talking about? Neely was a below-the-ground case where there was a trespass found because a sewer line exceeded the easement. So, that is a Supreme Court case that is directly on point with what we're dealing with here. We also have above-ground cases. McWilliams v. Morgan was an older case that we cited. That was a lumberyard case where there were damages for unlawful entry for having lumber on the land without right. We cite Burrell v. American Telephone. That's a 1906 Illinois Supreme Court case. Telephone line additions were added. They were interfering with the plaintiff's trees. Those lines were actually put on the highway without permission. It was considered to be invasive and a continuing invasion. There's another case that we have cited, Dickman v. Madison Light and Power. That's a 1922 case. There was electrical poles that were being set up to support, I believe in that case, there was a traction company for railroad. They needed additional electricity. Lines were put up, but they didn't have the permission. So, that was considered to be an ongoing trespass. Marlatt v. Peoria Water Works, 1969 case, placement of a water main in violation of an easement requirements determined a trespass. And then, as you pointed out, Your Honor, the one Supreme Court case, 1980 case, below-ground is also dealing with encroachment and ongoing trespass because the actual sewer line is exceeding the highway easement. So, in all of these cases, the courts have found that these either above-ground or directly below-ground types of instances would be considered an ongoing trespass. Now, there are other cases that I believe were cited by the defendant. Again, these cases, most of these cases, deal with instances where an injury is occurring off the property. The court is trying to determine how it would be known, whether something built on that other property would cause the statute of limitations to run, what is either known or not known. What becomes difficult in those cases, and the reason the court is engaging in those analyses, is sometimes it's not known immediately. For instance, Powell v. City of Danville, the Fourth District case where they were attempting to discover, I think they were looking at what was 13-205 at that time, there were toxins being dumped on neighboring properties. It, at that point, was not maybe immediately apparent what the injury was. Of course, that case also looked at the case of Leckrone, where sewage dumping was happening almost every day. So the court was trying to determine, okay, is this injury happening every day, or is the plant closed, or is there one sort of final sewage dump that happens, and then the statute of limitations starts to run? We don't have any of these complicated sort of issues with this particular case. We know that the encroachment is happening, at least we suspect from the survey that it's happening. We've shown in our pleadings that we believe it's happened. And the injury is clearly apparent, and it's clearly happening every single day. So 50 years from now, a hypothetical landowner who has power poles running across his land that had been improperly placed in the first place could allege a trespass and not be barred by the statute of limitations? I believe he could. I believe he could allege a trespass. Now, I'm not saying that there may not be other defenses to that particular cause of action. How could they be? Well, because I believe that there are, I mean, I believe there is a concept of adverse possession does exist. You know, I do believe that it depends on the circumstances. But no, I very much believe it's there without permission in violation of the private rights and without an easement being granted that there is a claim there for trespass. Would the landowner possessing full knowledge of the trespass for 50 years decides at that point he or she's going to file suit and they're not barred by the statute of limitations, a statute of limitations? I do not believe that they are, Judge. I do believe that. Why wouldn't that be adverse possession after that amount of time, 21 years, isn't it? I believe that it could be, I believe that could be a legitimate defense. But I still believe that the claim of trespass could be filed and would not necessarily be blocked by a statute of limitations defense. The question, Your Honor, that you were asking is, does notice by that landowner somehow negate the trespass claim after all those years? And I believe, and I'm looking, that there was a, trespass is a strict liability offense. It does not, it is not necessary that the landowner instruct or tell the person that they're in trespass. I'm not, you know, I believe it is straightforward. I have a private use to my land, this is it, and you are on it, regardless of what your intent may be or whether good or bad. It's a strict liability type offense. So I do not necessarily buy into that notice in that particular instance is effective as a defense. I do believe that you could potentially have an adverse possession. Oh, adverse possession could be defeated easily by the landowner on an annual basis telling the power company, you're on my property. I do not consent to that power pole being on my property. That is no longer adverse possession. I mean, that is no longer consent on the part of the landowner to the power pole. It could be defeated and that affirmative defense wouldn't work. In any event, you're saying 50 years doesn't matter, 100 years doesn't matter. There is no statute of limitation that would apply. Not that I, no, Judge, not that I'm aware of. Okay. One thing I wanted to point out is that the Myers case is relied heavily by the defendant. That case is a drainage case. I believe I addressed the Toxins case, but that's a drainage case where they are looking to see if an injury has occurred somewhere off the property. One of the things that I noticed with that particular case is that the holdings in a lot of these cases are very limited and fact specific. In fact, in a very similar type of case, Zimmer v. Willowbrook, the court actually said that we believe a continuing trespass has occurred here. They were looking at the five-year statute of limitations on that. And that we want to limit cases like Myers to instances where we're dealing with sanitary districts as opposed to the type of case that was brought in Zimmer. So the holdings in a lot of these specific cases, even the appellate courts are reticent to expand those holdings to facts of other trespass cases that do not fit into that particular mold. One of the other things that I brought up, that we brought up, is the fact that although it is not specifically pled this way, what has essentially happened in this particular matter, in our opinion, is a taking. And obviously, there's the Illinois Constitution, Section 15. We cited the city of Chicago v. Prologis. There has always been a rule that just compensation for private property is given if a body is exercising eminent domain. Clearly, that never occurred here. We're not exactly sure. There did not appear to be any due process for my client at all. If you didn't plead this, why are you talking about a taking, an eminent domain? I don't understand how this comes into play. I understand the concept, but wouldn't it be nice if you pled that and put the other side on notice and put us on notice that we were going to be talking about the taking and due process? I bring it up, Judge, from the standpoint that in those types of instances, the Tort Immunity Act does not appear to apply. And trying to apply a Tort Immunity Act one-year statute to an instance where we are dealing with essentially, even though it hasn't been pled, a taking appears to be inequitable. And that's why I bring it up. Okay. Mr. Mann, you are out of time. You'll have time in rebuttal. Thank you. Thank you. Mr. Green, response? May it please the Court, Counsel. I'm here on behalf of Leo Weber. Of course, we're here to ask that the trial court's dismissal of Mr. Weber from this suit be affirmed for two reasons. First of all, the claims are time barred. And secondly, the plaintiff failed to state a claim for which the court could grant relief for either trespass or aiding and abetting trespass. I'll first address the statute of limitation issue. The complaint doesn't specifically allege when the poles were installed. But, of course, Counsel has admitted in his briefing here today that not only were the poles installed in fall 2014, but the plaintiff, Mr. Smicker, was well aware of that fact at that time. Yet, he didn't file suit until more than one year later in August 2016. So that's a clear violation of the one-year limit under the Tort Immunity Act to bring civil action against a local governmental employee such as Mr. Weber, who is the road commissioner of Rogers Township up at the very northern tip of Ford County. Mr. Green, just before you go further, so what did the trial court find to be the start date for calculating the one-year statute? There was no particular finding, but what I did argue in the trial court was that when a plaintiff files an action, the plaintiff has to plead sufficient facts to show that the action complies with the statute of limitations. They didn't do that. And not only was there a complaint filed initially, but there was an amended complaint. I filed a motion to dismiss the initial complaint, and one of my arguments was these claims are time-barred. So the plaintiff knew exactly what my argument was, yet when the plaintiff was given an opportunity to re-plead, he didn't say exactly when the poles were installed. But I think, you know, based on the argument in the brief or the admission of the brief in the mission today, the claim accrued in the fall of 2014, yet the suit was not filed until August of 2016. Is that then a dismissal pursuant to 2619? Because have you established affirmatively that the claim is time-barred, or is that a failure to plead a cause of action in compliance with the appropriate statute of limitations? Do you understand the distinction? Well, I did bring the motion pursuant to 619, Your Honor. And it was granted as well. What I'm asking is, does the record support a dismissal pursuant to 2619? Because doesn't the record have to establish as an affirmative matter that the claim was not brought within the time allowed? I don't know the answer to that other than the complaint does not show on its face that the suit was timely filed. There are not enough facts alleged to show that the one-year statute was complied with. Was there an affidavit filed on the part of Mr. Weber as to when the poles were placed? There was not. So nothing in the way of evidentiary support establishing the affirmative matter that you asserted in the 2619 motion? That's correct. So then we get to the issue of, does this constitute a continuous tort or trespass so that the one-year limit that I've argued does not apply? Of course, what I asked the trial court to do and what I'm asking this honorable court to do is to follow the Supreme Court holding in Feltmire and Bank of Ravenswood. And the rule of law there was that a continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. And so here what we have is power poles that were installed, and then there's been no change since then. So to the extent that that's an invasion, that happened in the fall of 2014, and nothing has changed since then. They may not like the fact that the poles are still there, the plaintiff doesn't, but that's just continual ill effects from this alleged initial violation. So this is not a case involving a continuous trespass or tort. Based on Bank of Ravenswood, based on Feltmire, I realize Feltmire has facts completely dissimilar to what we have here. I think Bank of Ravenswood is right on point. And my opponent mentioned, well, there's some distinctions between Bank of Ravenswood in this case, but the plaintiff, in that matter, did assert a trespass claim against the city of Chicago. And although the subway was nine feet below ground, the system caused vibration above ground, and the plaintiffs were, I think, condominium owners. And so it was, although the subway was underground, it was affecting people above ground. They were alleging trespass, but I believe the subway system was completed sometime in 1988, yet the plaintiff property owners above ground didn't file suit until 1990. Those claims were barred under the time bar because they filed suit more than one year after the subway was completed. So the same analysis here, the suit should be filed within one year of the poles being installed. It wasn't. It was more than, you know, it's almost two years later. There was some analysis in Ravenswood about, you know, should the one-year statute apply under the Tort Immunity Act or the four-year construction statute, but that case was before the court had the benefit of the Supreme Court's Tassado decision. I can't remember what year it was, but it was after Bank of Ravenswood where you go with a specific statute. Here, that would be the one year because it's a civil action. My client's a governmental employee, and that's what the folks across the street decided, that my client should be protected by that one-year statute. Mr. Green, do you think Neely v. Coffey at least has language that seems to be against your position? At first blush, you know, that concerned me, but the Supreme Court, of course, that was 1980, and they didn't go into a lot of detail or analysis. I don't really know what to make of that, and all I can say is I think at this point, the court has to follow Feltmire and Bank of Ravenswood. Those cases are more recent, and I think that could have been dicta, and also I know that was a sewage line, and so maybe that was a continuous court because sewage was constantly going through that line on somebody else's property. We don't have those kind of facts here, but Neely, I don't think it applies. Was the statute of limitations actually even argued in Neely? I didn't think I saw that. I don't know that it necessarily was, but I think the classic example of a continuous tort was in the Myers case where you have the upstream landowner constructs a levee, and then there's flooding on the downstream landowner's property, but this is happening every year, and so the downstream landowner files suit seven years after the levee is constructed, and so the upstream defendant landowner is like, well, wait a second, you should have sued me within five years, but the court said no, this is a continuous tort because there's this constant erosion, washing, and scouring of the downstream landowner's property every year, so there's a change every year. The levee may have been installed seven years ago, but it's still causing additional problems today, but here all we have are power poles that were installed that are unchanged, and so, of course, my opponent is saying, well, it's continuous. Even 50 years from now, somebody could file suit. Oh, wait, there could be an adverse possession defense, but even then, I suppose it would be 19 years from now, my opponent is saying a suit could be filed, and that's not consistent with the rule of law in Feltmire and Bank of Ravenswood, and so then we get to the issue of, well, even if the claims aren't time-barred, does the plaintiff state claims for trespass and aiding and abetting trespass? What we know, based on the four corners of the complaint, all my client did was sign a permit directing ComEd to install poles 32 to 33 feet from the road's center line, and even in the plaintiff's complaint and amended complaint, that's the standard used in Illinois for right-of-ways, so my client didn't do anything other than direct ComEd to place these poles within the legal right-of-way, and if ComEd went out and they violated the right-of-way, then that's an issue between ComEd and Mr. Schmicker. In the original complaint, which, by the way, was verified through an affidavit by Mr. Schmicker, paragraph 20, he alleges that my client never proactively made a determination of the correct placement of such poles prior to the utility company moving or replacing the poles, but when he filed his amended complaint, he changed the wording a little bit where he says that we didn't make an initial determination, but then on belief that my client may have been present when the poles were installed. First of all, I think there's a judicial admission in the original complaint that Leo Weber didn't do anything about improper pole placement prior to the poles were put in, but even if the court has to stretch and say, well, maybe he was there when it happened, there's no indication that Leo Weber directed ComEd to place the poles outside of the right-of-way, and then, of course, what the plaintiff is trying to say is, well, Leo Weber should have told ComEd to remove the poles, but that's not within his statutory duties as a road commissioner. My guy has to worry about the safety of his roads, so to the extent that the poles are farther from the road than what he ordered them to be, that's not a safety concern. I don't know that he'd have jurisdiction to tell ComEd to remove poles that are not within a right-of-way. He's already issued a permit saying place the poles within the right-of-way. I think that ComEd still could have relied upon that permit after the poles were installed and moved them to within the right-of-way. ComEd didn't need permission from the road commissioner to do that. They already had permission to do that. So no matter how you construe the allegations, there's not a cause of action for trespass or aiding and abetting trespass against Leo Weber. So for these reasons, we would ask that the dismissal order be affirmed. Thank you very much. Okay. Thank you. Mr. Mann, rebuttal argument? Mr. Mann, if I could first ask you to please come up to the podium next. Is there any dispute that the complaint was filed more than one year after the poles were placed? Well, we don't know exactly when the poles were placed. We weren't there. My question is, I don't know what your position is. Is it your position that the poles were placed more than one year or less than one year prior to the suit being filed? Well, it's our position that they were discovered over a year before the complaint was filed. In his field. So they were discovered more than a year prior to the complaint being filed? That's correct. Okay. To address this matter of the permit very briefly, one of the things that had occurred was the comment had asked for some guidance in that regard. But Mr. Weber seemed to indicate that perhaps that the measurement from the pins was the correct measurement. And I believe that throughout the complaint we've talked about the fact that he had the opportunity to fix this and ComEd was looking to him for guidance to fix this and it never happened. So that's where I think regardless of whether or not he had great intentions with the permit and he felt it was clear, there was an issue. And it caused these poles to be moved into my client's land. And he was aware at a certain point that it was on his land. And I think that that's where we're communicating in our complaint that there was a substantial likelihood that he was aware that the trespass was going to occur. But getting back to this issue with Bank of Ravenswood and whether or not the tortoise is continuing, it clearly is. I mean, it's on his land every single day. I guess, you know, without trying to get overly cute with an analogy, the way that I see it is, here's a for instance. Someone goes into a house uninvited, turns on the sink, leaves the water running, leaves. Water runs over the sink, floods the house. There's one act, there's one overt act, there's an injury that continues from it. But in scenario number two, what happens when somebody actually goes into the house uninvited without a lease and stays there for a year? For two years? Can we say that somehow because he's been there uninvited for the course of a year or over a year, that now the landowner cannot bring an action for ejectment or trespass? That seems completely inequitable to me. There is a continuing. Yeah, but each day would be a new trespass, wouldn't it? Each day would be a new trespass. The issue that arises in those types of cases is, is there a limitation on damages? Is the damages limited to the one-year tort? And that becomes the issue. But in this particular instance, counsel suggests that because the court in Neely doesn't deal with the issue of the construction is an older case that is somehow irrelevant. It's not. It's a straightforward case that's dealing with a direct encroachment and trespass to land, Your Honors. And because of that, the court does not need to get into this complicated analysis of what is happening off the land, when the construction is happening off the land, and whether or not it should be known by the plaintiff whether an injury was happening and whether the statute starts to run. That's not what we're dealing with in this particular instance. Those cases are confusing of a straightforward issue, in our opinion. I appreciate your time. Thank you. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue. Okay.